## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KENNELSOURCE, INC.,                    )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )    No. 05 C 1788
                                       )
BARKING HOUND VILLAGE, LLC;            )
BARKING HOUND VILLAGE FRANCHISE,       )
LLC; JOHN HOGG; DAVID YORK;            )
HEATHER MCCALL; and MARK PEEPLES,      )
individually and d/b/a                 )
www.barkware.com,                      )
                                       )
          Defendants.                  )

### MEMORANDUM OPINION

Before the court is the motion of certain defendants to dismiss the first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), (b)(3), and (b)(6).  For the reasons explained below, the motion is granted in part.

### BACKGROUND

This is an action in which plaintiff Kennelsource, Inc. ("Kennelsource"), an Illinois corporation, alleges that defendants misappropriated its software.  Kennelsource's software is called Pawtracker and is designed to facilitate the management of pet-care businesses.  Pawtracker is available for license via Kennelsource's Web site.  In January 2005, plaintiff filed copyright applications

for the Pawtracker application code and for the Pawtracker text, images, and screens with the United States Copyright Office.[1]

On plaintiff's Web site, www.kennelsource.com, prospective customers may request a working demonstration of Pawtracker after checking a box acknowledging that the prospective customer (1) will be the "Recipient" of access to the "Pawtracker Demo Application"; and (2) has read the "Confidentiality and Non-Disclosure Agreement below" and agrees to its terms and conditions. (First Amended Complaint ¶¶ 11, 16-17.) The Confidentiality and Non-Disclosure Agreement (the "Agreement") provides, inter alia, that the Recipient agrees that he will use the software only for purposes of evaluating its functionality for possible future license by the Recipient and for no other purpose. (Id. Ex. A.)

Kennelsource alleges that on March 17, 2004, defendant Heather McCall went to plaintiff's Web site, completed a form requesting access to the Pawtracker Demo Application, and checked the acknowledgment box described supra. In the "organization" field on the request form, McCall indicated that she was affiliated with "Barking Hound Village" and that its Web site was www.barkinghoundvillage.com.

The complaint alleges that www.barkinghoundvillage.com is the Web site of defendants Barking Hound Village, LLC and Barking Hound

---

[1] It is unclear from the First Amended Complaint whether plaintiff in fact obtained copyright registrations.

Village Franchise, LLC (collectively, "Barking Hound"). Barking Hound operates pet care and grooming facilities in Georgia and Texas and and is co-owned by defendants John Hogg and David York. According to plaintiff, McCall "operates, manages, is employed by, volunteers resources to and/or otherwise is an agent of" Barking Hound. (First Amended Complaint ¶¶ 4-7.)

Approximately one month after McCall requested access to the Pawtracker demonstration software, Kennelsource discovered that Barking Hound's Web site contained portions of Kennelsource's Web site--specifically, the Pawtracker logo, application text and graphics. Kennelsource alleges upon information and belief that the logo, text, and graphics were knowingly obtained by defendants through McCall's request for the demonstration software, in violation of the Agreement. Kennelsource further alleges that defendants Hogg and York directed McCall to fraudulently enter into the Agreement with plaintiff.

Some time thereafter, plaintiff again visited Barking Hound's Web site and discovered a new page entitled "BHV Family Login" that provided a link to an online reservation system at the address www.secure.barkware.com/bhkm/client/index.php. Plaintiff then deactivated McCall's access to the Pawtracker demonstration software based on its belief that Barking Hound was creating its own software application modeled on Pawtracker. Plaintiff also visited the www.barkware.com Web site and discovered that the site

offers pet-care service providers access to software to manage their businesses (the "Barkware software"). The description of services and products on the Barkware Web site is a verbatim replication of the description of plaintiff's Pawtracker services on plaintiff's Web site.

The www.barkware.com Web site is registered to defendant Mark Peeples, who plaintiff alleges "operates, manages, is the administrator of, webmaster for, employed by, volunteers resources to and/or otherwise is an agent of" Barking Hound "and otherwise is doing business as www.barkware.com." (First Amended Complaint ¶ 8.) Plaintiff alleges upon information and belief that the Barkware software is "copied, based upon and/or derived from" Pawtracker and was created "from information only obtainable to" Recipients of the Pawtracker demonstration application. (Id. ¶ 27.)

Plaintiff also contends the following upon information and belief: prior to entering into the Agreement, McCall intended to violate the Agreement by providing Peeples with access to the Pawtracker demonstration application; York and Hogg directed McCall to do so; and Peeples, York and Hogg sought to create a company that provides pet-care providers with business software and conspired with McCall to request access to Pawtracker with the intent to copy Pawtracker without plaintiff's consent or authorization.

The First Amended Complaint contains ten counts.  In Count 1, plaintiff seeks injunctive relief, and in Count 10, plaintiff seeks punitive damages.  The complaint also alleges breach of contract (Count 2); fraud (Count 3); civil conspiracy (Count 4); copyright infringement and willful copyright infringement (Counts 5 and 6); plagiarism (Count 7); misappropriation of trade secrets (Count 8); and conversion (Count 9).  Counts 1 and 3-10 are alleged against all of the defendants, and Count 2 is alleged against all of the defendants except Peeples.

Barking Hound, Hogg, York, and Peeples move to dismiss the First Amended Complaint for lack of personal jurisdiction, lack of venue, lack of subject matter jurisdiction, and failure to state claims.[2]  At a hearing on defendants' motion in April 2006, we instructed the parties to brief only the issues of jurisdiction and venue, and the parties now have submitted their briefs.

## DISCUSSION

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that jurisdiction over the defendant is proper.  See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997).  The court, in deciding such a motion, may receive and consider affidavits from

---

[2]  As for McCall, plaintiff filed a motion for service by publication, indicating that after diligent inquiry, McCall could not be located.  The motion was granted.  Thereafter, plaintiff filed a document indicating that the required notice had been published.  McCall has failed to answer or otherwise plead to the First Amended Complaint.  No attorney has entered an appearance on McCall's behalf, nor has McCall entered a pro se appearance.

both parties and will resolve all factual conflicts in favor of the plaintiff.  See Nelson by Carson v. Park Industries, Inc., 717 F.2d 1120, 1123 (7th Cir. 1983).

Plaintiff asserts both federal question and diversity jurisdiction.  A federal district court sitting in diversity in Illinois has jurisdiction over a non-consenting, non-resident defendant if an Illinois state court would have jurisdiction.  See McIlwee v. ADM Indus., Inc., 17 F.3d 222, 223 (7th Cir. 1994).  In a federal question case, the inquiry is whether haling defendants into court in Illinois accords with principles of due process, as set forth infra, and whether defendants are amenable to process from the court.  See United States v. De Ortiz, 910 F.2d 376, 381-82 (7th Cir. 1990).[3]

"Three distinct obstacles to personal jurisdiction must generally be examined: (1) state statutory law, (2) state constitutional law, and (3) federal constitutional law."  RAR, 107 F.3d at 1276.  As for state statutory law, the Illinois long-arm statute provides that an Illinois state court may exercise jurisdiction "on any other basis now or hereafter permitted" by the

_____

[3]/  Amenability to service derives from Federal Rule of Civil Procedure 4(k)(1), which provides that service is effective to establish jurisdiction over a defendant who can be subjected to the forum state's jurisdiction or when authorized by a federal statute that provides for nationwide service of process.  See Watchworks, Inc. v. Total Time, Inc., No. 01 C 5711, 2002 WL 424631, at *3 (N.D. Ill. Mar. 19, 2002).  The Copyright Act, which governs this dispute, does not provide for nationwide service of process.  Therefore, defendants' amenability to service is governed by the Illinois long-arm statute (the analysis of which is explained infra).  See id. at *4.

state and federal constitutions.  735 ILCS 5/2-209(c).  Because §
2-209(c) authorizes personal jurisdiction to the constitutional
limit, the analysis collapses into two constitutional inquiries--
one state and one federal--and we need not consider whether
defendants engaged in any of the acts enumerated in the Illinois
long-arm statute.  See <u>RAR</u>, 107 F.3d at 1276.  Typically, the
courts look to the federal due process clause to construe the
Illinois due process clause.  See <u>McMurray v. Improvenet, Inc.</u>, No.
00 C 7137, 2001 WL 561376, at *1 (N.D. Ill. May 22, 2001) (Grady,
J.).

     The Constitution permits the court to exercise jurisdiction
over defendants who have certain "minimum contacts" with the forum
state, such that jurisdiction does not offend "traditional notions
of fair play and substantial justice."  <u>International Shoe Co. v.
Washington</u>, 326 U.S. 310, 316 (1945).  Even defendants not
physically present in the jurisdiction have sufficient "minimum
contacts" if they do some act by which they purposefully avail
themselves of the privilege of conducting activities in the forum
state, <u>see</u> <u>Hanson v. Denckla</u>, 357 U.S. 235, 251-53 (1958), and if
they "should reasonably anticipate being haled into court there."
<u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).
Due process also requires that the action arise from or relate to
the defendant's contacts with the forum state.  See <u>Burger King
Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985).  The court should

decide whether it is reasonable to require the non-resident defendant to litigate in the forum state, considering factors such as the relative interests of the litigants, the forum's interest in litigating the dispute, and "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." <u>Burger King</u>, 471 U.S. at 477 (quoting <u>World-Wide Volkswagen</u>, 444 U.S. at 292).

"General jurisdiction . . . is for suits neither arising out of nor related to the defendant's contacts [with the forum], and it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum." <u>RAR</u>, 107 F.3d at 1277. Specific jurisdiction, on the other hand, refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. <u>See</u> <u>id.</u> Plaintiffs apparently rely only on specific jurisdiction.[4]

---

[4] Moreover, defendants allege various facts that are relevant to general jurisdiction, and plaintiff fails to even attempt to rebut those facts. Plaintiff fails to rebut the following statements contained in the declaration of David York: Barking Hound Village LLC is a Georgia limited liability corporation that is co-owned by York and Hogg. Barking Hound Village Franchise LLC is a Georgia limited liability corporation that is also co-owned by York and Hogg. (Defs.' Mem. in Support of Mot. to Dismiss, Ex. 1, Decl. of David York ¶¶ 17-18, 26-27.) The Barking Hound entities do not have any assets or things of value located in Illinois and have never entered into any contracts in or related to Illinois. (<u>Id.</u> ¶¶ 20-22, 30-32.)

Concerning the individual defendant York, plaintiff fails to rebut the following statements contained in York's declaration: York is a Georgia resident who has lived and worked in Georgia for ten years. He is registered to vote in Georgia and holds a Georgia driver's license. He does not own a home in Illinois, pay taxes in Illinois, hold a driver's license or voter's registration in Illinois, or control any asset, bank account, or thing of value located in Illinois. He has not entered into any contract in or related to Illinois in the past five years. He has not negotiated any deals with plaintiff or its representatives in Illinois, and except for a settlement negotiation meeting after the filing of this lawsuit, has never met with the plaintiff or its representatives in Illinois. He was not served with process in Illinois. (Decl.

According to defendants Barking Hound, Hogg, and York, they do not have continuous and systematic business or personal contacts with the state of Illinois, nor do they have contacts with Illinois concerning the matters alleged in the complaint. Barking Hound operates solely in Georgia and Texas and does not conduct business in Illinois.

McCall is the sole alleged party to the Agreement with Kennelsource. York states in his declaration that McCall was an employee of Barking Hound from December 1, 2000 until March 16, 2004 (one day before she allegedly requested access to the Pawtracker demonstration application). York also states that neither he nor anyone else from Barking Hound directed or authorized McCall to request the Pawtracker demonstration and that until this lawsuit was filed, neither he nor anyone else from

---

of David York ¶¶ 4-16.)

Concerning the individual defendant Hogg, plaintiff fails to rebut the following statements contained in Hogg's declaration: Hogg is a Texas resident who has lived and worked in Texas for three and a half years. He is registered to vote in Texas and holds a Texas driver's license. He does not own a home in Illinois, pay taxes in Illinois, hold a driver's license or voter's registration in Illinois, or control any asset, bank account, or thing of value located in Illinois. He has not entered into any contract in or related to Illinois in the past five years. He has not negotiated any deals with plaintiff or its representatives in Illinois and has never met with the plaintiff or its representatives in Illinois. He was not served with process in Illinois. (Defs.' Mem. in Support of Mot. to Dismiss, Ex. 2, Decl. of John Hogg ¶¶ 4-16.)

Concerning the individual defendant Peeples, plaintiff fails to rebut the following statements contained in Peeples's declaration: Peeples is a Georgia resident who has lived and worked in Georgia for fourteen years. He does not own a home in Illinois, pay taxes in Illinois, hold a driver's license or voter's registration in Illinois, or control any asset, bank account, or thing of value located in Illinois. He has not entered into any contract in or related to Illinois in the past five years. He has not negotiated any deals with the plaintiff or its representatives in Illinois. He was not served with process in Illinois. (Defs.' Mem. in Support of Mot. to Dismiss, Ex. 3, Decl. of Mark Peeples ¶¶ 4-15.)

Barking Hound had any knowledge that McCall had made such a request. (Decl. of David York ¶¶ 35-39.) York has never seen, downloaded, used, copied, or in any way encountered the Pawtracker software, and prior to this lawsuit, he had never visited Kennelsource's Web site. (Id. ¶ 40, 42.)

Hogg states in his declaration that his involvement with Barking Hound is merely that of an investor and as the registered agent. He has never been involved in the day-to-day operations of Barking Hound. He has never had any contact with McCall and prior to this lawsuit had no knowledge of her whatsoever. He also has had no contact whatsoever with co-defendant Mark Peeples or with plaintiff. He has no knowledge of past or present use of kennel-management software by Barking Hound. (Decl. of John Hogg ¶¶ 22-27.)

Peeples states in his declaration that he has never been an employee of Barking Hound; rather, in November 2002, he began designing kennel-management software exclusively for Barking Hound as an independent contractor. From November 2002 to the present, he has upgraded, updated, and provided support for Barking Hound's kennel-management software. Peeples calls his software "Barkware" and has hoped that one day it will be a viable, marketable product. However, to date, it has never been offered for sale to anyone other than Barking Hound and has never been sold to anyone other than Barking Hound. Peeples created the Barkware Web site, which

was hosted in Georgia, but the Web site is no longer active.
Peeples states that he has never seen, downloaded, used, copied, or
in any way encountered Pawtracker. Moreover, he states that he has
not had any contact with McCall since her employment with Barking
Hound ended in March 2004, and that he has had no contact
whatsoever with McCall related to Kennelsource or the Pawtracker
software. (Decl. of Mark Peeples ¶¶ 16-26.)

Plaintiff responds with just two brief arguments.[5] The first
is that "[u]pon information and belief" McCall "was and continues
to be under Defendants' direct supervision and control as an
employee, agent or other similarly situated affiliate of
Defendants." (Pl.'s Mem. at 2.) According to plaintiff, "[b]y
virtue of McCall entering the Agreement with Plaintiff under
Defendants' direct control and supervision regarding jurisdiction
and by virtue of the Agreement being located in this district,
Defendants have subjected themselves to personal jurisdiction in
this district." (Id.)

Plaintiff fails to cite any case law in support of its
argument. More importantly, it also fails to submit any evidence
to refute the statements in the declarations of Hogg, York, and
Peeples. "[O]nce the defendant has submitted affidavits or other

_____

[5] Plaintiff also contends that "[i]n addition, Plaintiff's property at
issue, its copyrighted material, resides in and was damaged in this district."
(Pls.' Mem. at 2.) We focus on the defendants' conduct, however, in determining
the reach of our jurisdiction. See Dehmlow v. Austin Fireworks, 963 F.2d 941,
946 (7th Cir. 1992).

evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." <u>Purdue Research Found. v. Sanofi-Synthelabo, S.A.,</u> 338 F.3d 773, 783 (7th Cir. 2003). Plaintiff has failed to rebut defendants' evidence regarding their involvement with McCall.

We also note that plaintiff's arguments lump all of the moving defendants together without providing any reasoning as to why, which is especially problematic considering plaintiff has provided no evidence as to the alleged "supervision and control" of McCall. Each defendant's contacts with the forum state must be assessed individually. <u>See</u> <u>Keeton v. Hustler Magazine, Inc.,</u> 465 U.S. 770, 781 n.13 (7th Cir. 1984).

Plaintiff's second theory of personal jurisdiction is that "[d]efendants are actively soliciting and doing business with persons residing in this district by advertising and putting into commerce their Barkware kennel management software and related goods and services. Defendants offered Barkware for purchase throughout the U.S. including Chicago, Illinois. See Defendants' www.barkware.com website attached as an exhibit to the Complaint." (Pl.'s Mem. at 2.)

Attached to plaintiff's brief is the affidavit of Daniel Rubenstein, the president of Kennelsource. Rubenstein states: "Defendants are actively soliciting business in and marketing

products and services to the Northern District of Illinois via the Internet" and "I have personally seen that Defendants have offered for sale Barkware kennel management software and related goods and services on their website, www.barkware.com, to anyone who wishes to purchase such items from them. Defendants offered Barkware for purchase throughout the U.S. including Chicago, Illinois." (Pl.'s Mem, Ex. 1, Aff. of Daniel Rubenstein ¶¶ 3-4.)

Again, we have the "lumping" problem: plaintiff, and Rubenstein, treat the moving defendants as a group. The unrebutted evidence (and plaintiff's allegation) is that the Barkware Web site is registered to Peeples, not any other defendant, and that the Barkware software was created and developed by Peeples, not any other defendant. The allegation that the Barking Hound Web site contained a link to the Barkware Web site does not equate to an allegation that Barking Hound, York, or Hogg controlled the Barkware Web site. Moreover, plaintiff has failed to submit evidence that anyone but Peeples controlled the Barkware Web site.

Another fatal problem with plaintiff's argument and Rubenstein's statements concerns the alleged "offer for sale" or "offer for purchase" on the Barkware Web site. To support its assertion that defendants "offered Barkware for purchase" on the Barkware Web site, plaintiff relies on a screen shot of a page on the Barkware Web site, which is included in Exhibit K to the First Amended Complaint. The Web page contains a short description of

the Barkware kennel management system. The top of the page contains links to "home page," "contact us," and "products." There is no indication anywhere on the page that the Barkware software is available for purchase, and more importantly, no mechanism by which consumers can order or purchase the software. The Seventh Circuit has held that a nonresident defendant's maintenance of a passive Web site that merely provides information about a company and its products does not supply the minimum contacts necessary to permit the exercise of personal jurisdiction. See Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549-50 (7th Cir. 2004). Here, we have no evidence that www.barkware.com was anything but a passive Web site, and plaintiff's conclusory assertions that defendants "offered [Barkware] for sale" on the Web site fail to adequately rebut that evidence.

Plaintiff has failed to make a prima facie showing that defendants Barking Hound, York, Hogg, or Peeples have purposefully availed themselves of the privilege of conducting activities in Illinois such that any of them should reasonably anticipate being haled into court here. Accordingly, it would not be fair, just, or reasonable to require them to defend this action in Illinois, and the complaint will be dismissed as against these defendants.

In its response brief, plaintiff requests "an opportunity to amend its First Amended Complaint to further show jurisdiction is proper in the event the Court finds otherwise." (Pl.'s Mem. at 3.)

Plaintiff fails to indicate how it would amend the complaint (*i.e.*, what additional factual bases for jurisdiction would be alleged) or why evidence of these jurisdictional bases was not submitted in response to defendants' motion, and frankly, plaintiff's brief does not evince a command of the principles of personal jurisdiction. Moreover, it does not appear to us that plaintiff will be able to allege a colorable basis for personal jurisdiction over the moving defendants. Accordingly, plaintiff's request for leave to amend the First Amended Complaint is denied, and the dismissal will be with prejudice as far as personal jurisdiction is concerned.

In light of our ruling, it is not necessary to address defendants' venue, subject matter jurisdiction, or Rule 12(b)(6) arguments.

## CONCLUSION

The motion of defendants Barking Hound Village, LLC; Barking House Village Franchise, LLC; John Hogg; David York; and Mark Peeples to dismiss the first amended complaint is granted to the extent that the complaint is dismissed as against these defendants for lack of personal jurisdiction. The dismissal is with prejudice as to personal jurisdiction.

The case is set for a status hearing on September 13, 2006, at 10:30 a.m.

DATE:        September 5, 2006


ENTER:
_____

John F. Grady, United States District Judge